## BARNES vs. THE TRENTON GAS LIGHT COMPANY.

1. Where executors are authorized to sell the real estate of their testator at their discretion, and the sale is to be made with a view to the investment of the net proceeds on a special trust, the purchaser is not bound to see to the application of the purchase money.

2. An allegation that the purchase money of real estate sold by executors was not paid to or received by them "as executors," and that they, "as executors," received no consideration for the conveyance, is not equivalent to an averment that no consideration was, in fact, paid.

3. If, by such allegation, the pleader intended to state that, although the consideration was paid to the executors, it was paid in such a way as that it ought not to be regarded as having been paid to or received by them in their representative or trust capacity, the facts should have been set forth so as to enable the court to determine the character of the payment.

4. The rule, that notice of facts to an agent is constructive notice thereof to the principal himself, has no application to a case of a sale to a corporation, by its president, of property purchased by him in his private capacity ; in such a transaction, the officer, in making the sale and conveyance, stands as a stranger to the company.

5. When an officer of a corporation is dealing with them in his own interest opposed to theirs, he must be held not to represent them in the transaction so as to charge them with the knowledge he may possess, but which he has not communicated to them, and which they do not otherwise possess, of facts derogatory to the title he conveys.

On bill for relief and demurrer.

*Mr. B. Gummere,* for demurrant.

*Mr. S. D. Dillaye,* for complainant.

THE CHANCELLOR.

The bill is filed by the widow of John R. S. Barnes, deceased, who died in April, 1874, to recover her dower as such widow, in certain land in Trenton, which, by the will of Isaac Barnes, father of her late husband, was given to his three children, John R. S. Barnes, William S. Barnes, and Lydia S., wife of Dr. John L. Taylor. By that will the testator gave all his property to his children, subject, however, to a provision that his executors, (his two sons and son-in-law above mentioned), might sell any part, or the whole of the property, as they might deem expedient, the net proceeds of sale to be put at interest so that the testator's widow, Mary Barnes, should receive the interest during her life. The bill states that Isaac Barnes died on or about the 7th of March, 1848; that his will was proved by the executors, and that afterwards, and on or about the 20th of July, 1848, they conveyed the premises in question to Joseph C. Potts, who was a counsellor-at-law, and was their legal adviser, and that he subsequently, on or about the 1st day of August, in the same year, sold the property to The Trenton Gas Light Company, of which he was president. The bill charges that the executors, as such, had no title to the land, and had no power to sell it, except under the will; that on the sale to Mr. Potts, they, as executors, received no money or consideration for it, and that he received the deed from them without paying to them, as executors, any consideration whatever; that at the time of that conveyance there were no legal demands existing against the property; that he took the deed from the executors with full notice of the will and its provisions, and of the powers and duties of the executors; that no money was put at interest by the executors as the net proceeds of the sale, or as any part of the proceeds, in order that Mary Barnes, the testator's widow, should receive the interest during her life; that neither Mr. Potts nor the executors saw to the application of any purchase money for the property, and that the executors never applied any money received by them as the consideration for the sale of the property to the satisfaction of any debts

or demands against the testator, and that the conveyance to Mr. Potts was in fraud of the provisions of the will, and was made with the fraudulent intent of defeating the complainant's right of dower in the property. The bill charges notice on the defendants, solely on the ground that at the time of the conveyance to them, Mr. Potts was their president.

The executors had power under the will to convey the property in question. They were authorized to sell at their discretion, and the sale was to be made with a view to the investment of the net proceeds on a trust which might last for the lifetime of the testator's widow. The purchaser was not, under the circumstances, bound to see to the application of the purchase money. *Perry on Trusts,* §§ 704, 799; *Nicholls* v. *Peak,* 1 *Beas.* 69; *Doran* v. *Wiltshire,* 3 *Swanst.* 699; *Lewin on Trusts* 433; *Wood* v. *Harman,* 5 *Madd.* 368; *Lock* v. *Lomas,* 5 *DeG. & S.* 326; *Hauser* v. *Shore,* 5 *Ired.* 357; *Balfour* v. *Welland,* 16 *Ves.* 151. "The general rule," says Perry, "is controlled, if a sale is directed, but the proceeds are not to be paid over to the *cestui que trust,* but are to be held by the trustees upon some special trusts. In such case the implication is plain that the settlor intended to confide the execution of the trust to the trustees, and that they have power and authority to receive the trust fund and give receipts." The purchase money, it may be assumed, was paid by Mr. Potts. The bill does not deny that it was paid, but it alleges that it was not paid to or received by the executors, "as executors," and that they, "as executors," received no consideration for the conveyance. This qualification forbids the acceptance of the statement as an averment, or as equivalent to an averment that no consideration was, in fact, paid. *Lube's Eq. Pl.* 350; 1 *Dan. Ch., Pr.* (*4th ed.,*) 545. As the statement stands, it is equivalent to an averment that the consideration was paid to and received by the executors, but not in their trust capacity. If the pleader intended to state that, although the consideration was paid to the executors, it was paid in such a way as that it ought not to be regarded as having been paid to or received by them in their representa-

tive or trust capacity, the facts should have been set forth so as to enable the court to determine the character of the payment.

The bill charges that Mr. Potts had notice " of the will and its provisions, and the character, power and duties of the executors." Notice of all these things would not have devolved upon him the duty of seeing to the application of the purchase money, for the reason already given.

Passing by the question as to whether the complainant has any valid claim to dower on the case made by the bill, seeing that her claim to relief is based on the allegation that the executors, of whom her husband was one, were, in selling, guilty of a fraud upon the beneficiaries under the will, who were the testator's widow and children, and giving her the benefit of the general allegation in the bill, that the conveyance was intended to defeat her dower, the main question presents itself, as to whether, on the statements of the bill, the action can be maintained. That the defendants are *bona fide* purchasers for valuable consideration, is not denied. Their title is not impugned, except on the ground of notice, and the claim to relief is based on the allegation that at the time when the conveyance was made by Mr. Potts to them, he was their president, and this fact is relied upon as, of itself, sufficient to establish notice to them of all the facts which the bill charges were within his knowledge. The general proposition is undoubtedly true, that notice of facts to an agent is constructive notice thereof to the principal himself, where it arises from, or is at the time connected with the subject matter of his agency. The rule is based on the presumption that the agent has communicated such facts to the principal. *Story on Agency,* § 140. On principles of public policy the knowledge of the agent is imputed to the principal. But the rule does not apply to a transaction such as that under consideration; for, in such a transaction, the officer, in making the sale and conveyance, stands as a stranger to the company. *Stratton* v. *Allen,* 1 *C. E. Green* 229. His interest is opposed to theirs, and the presumption is, not that he will communicate his knowledge of

any secret infirmity of the title to the corporation, but that he will conceal it. Where an officer of a corporation is thus dealing with them, in his own interest opposed to theirs, he must be held not to represent them in the transaction, so as to charge them with the knowledge he may possess, but which he has not communicated to them, and which they do not otherwise possess, of facts derogatory to the title he conveys. *Commercial Bank* v. *Cunningham*, 24 *Pick.* 270; *Kennedy* v. *Green*, 3 *M. & K.* 699; *In re European Bank*, *L. R.*, 5 *Ch. App.* 358; *In re Marseilles Extension Railway*, *L. R.*, 7 *Ch. App.* 161; *Ang. & Am. on Corp.* 308; *Winchester* v. *Balt. & Susq. R. R. Co.*, 4 *Md.* 231.

The defendants, then, according to the bill, are *bona fide* purchasers for valuable consideration, without notice. The complainant can have no relief against them.

The demurrer will be sustained and the bill dismissed, with costs.